**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Christopher Palermo

    v.                                              Civil No. 08-cv-87-JD

Al Wright, Superintendent,
Rockingham County Department
of Corrections

**O R D E R**

Before the Court is Christopher Palermo's complaint (document nos. 1 & 3),[1] filed pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA").[2] Palermo filed this action while housed at the Rockingham County House of Corrections ("RCHC"), alleging that the defendants, employees of the RCHC, have

---

[1] On March 7, 2008, Palermo filed his complaint in this matter (document no. 1). On March 11, 2008, Palermo filed an "additional complaint" (document no. 3). I construe the second filing as an addenda to the original complaint, and will consider both documents, in the aggregate, to be the complaint in this matter.

[2] Although Palermo does not specifically cite the RLUIPA as grounds for relief in this matter, I find that, construed liberally, the complaint alleges a claim under the RLUIPA and I will consider that claim, as described in this Order, to have been raised in the complaint.

violated his federal constitutional and statutory rights to freely exercise his religion, and his constitutional rights to adequate vision care and an adequate law library. The complaint is before me for preliminary review to determine whether, among other things, it states any claim upon which relief might be granted. See 28 U.S.C. § 1915A; United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under this Court's local rules, when an incarcerated plaintiff commences an action pro se and in forma pauperis, the magistrate judge is directed to conduct a preliminary review. Id. In conducting the preliminary review, the Court construes pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972) to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." See Castro v. United States, 540 U.S. 375, 381 (2003) (noting that

courts may construe pro se pleadings so as to avoid inappropriately stringent rules and unnecessary dismissals of claims); Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). All of the factual assertions made by a pro se plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true." This review ensures that pro se pleadings are given fair and meaningful consideration.

## Background

1.  Facts Relating to Religious Practice Claims

Christopher Palermo entered the RCHC on February 26, 2008. Upon his intake at the RCHC, Palermo notified RCHC staff that he required a religious diet because he follows the Wicca religion. The RCHC staff failed to honor his request for a religious diet, instructing him to "starve" if he didn't want to eat the meat served.

On March 4, 2008, Palermo spoke with RCHC Chaplain Kent Threlfail, who told Palermo that in his view, Wicca is akin to Satanism, and therefore, would not be recognized or accommodated

by Threlfail or the RCHC. Also on that basis, Threlfail denied Palermo access to certain religious ritual items.

2. <u>Facts Relating to Vision Care Claim</u>

On March 5, 2008, Palermo asked Debbie, an RCHC nurse, for an eye examination and glasses. Palermo explained to Debbie that he needed glasses because he has an astigmatism, and without corrective lenses, his eyes will get worse. Palermo further explained to Debbie that his glasses had been broken and disposed of by members of the RCHC staff. Debbie refused to provide Palermo with either an eye examination or glasses.

3. <u>Facts Relating to Law Library Claim</u>

Palermo claims that the law library at the RCHC is incomplete and inadequate to meet his legal research needs. Specifically, Palermo asserts that the library contains no federal caselaw, no legal research digests, and no Lexis computerized legal research system. The library, according to Palermo, contains only an incomplete set of New Hampshire statutes and information on immigration law. Palermo claims that his efforts to pursue pro se actions during his incarceration have been hindered by his inability to conduct legal research at the RCHC.

Discussion[3]

I.   Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983[4]; Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-331 (1986)); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Because

---

[3] The claims as identified herein will be considered for all purposes to be the claims raised in the complaint.  If Palermo disagrees with this identification of the claims, he must properly move to amend his complaint.

[4] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

Palermo's claims allege violations of federal constitutional and statutory law by state actors, his suit arises under § 1983.

## II. Pretrial Detainee Status

Palermo was a pretrial detainee at the RCHC at the time the events he describes occurred. Detainees have a constitutional right under the due process clause of the Fourteenth Amendment to be free of punishment. See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)). However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment." O'Connor, 117 F.3d at 15. Because the Due Process Clause prohibits the infliction of punishment on a person prior to a judgment of conviction, the issue in evaluating claims by a pretrial detainee is ultimately whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment. See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

III. <u>Claims Regarding Religious Practice</u>

    A.   <u>The First Amendment/Free Exercise Clause Claim</u>

The First Amendment of the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The first religion clause of the First Amendment, the Establishment Clause, mandates the separation of church and state. The second religion clause of the First Amendment, the Free Exercise Clause, requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution. <u>See</u> <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005).

A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974). The retained rights include the right to the free exercise of religion. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972). Prisons must provide all inmates reasonable opportunities to exercise religious freedom. <u>Id.</u> at 322, n.2. When a prisoner raises a Free Exercise Clause claim, he must "establish that a challenged policy restricts the

inmate's free exercise of a sincerely held religious belief." Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Barnett v. Comm'r, N.H. Dep't of Corr., No. Civ. 98-305-JD, 2000 WL 1499490 at *2 (D.N.H. Apr. 26, 2000).

The Supreme Court has held that a prisoner's sincerely held religious beliefs must yield, however, if contrary to prison regulations that are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-352 (1987) (finding that the Constitution does not require the prison to sacrifice legitimate penological objectives to satisfy an inmate's desire to exercise his religion so long as an inmate is not deprived of all forms of religious exercise).  A prison regulation must have a logical connection to the legitimate governmental interests invoked to justify it.  Turner, 482 U.S. at 89-90.  That connection may not be "so remote as to render the policy arbitrary or irrational."  Id.  Prisons must provide all inmates reasonable opportunities to exercise their religious freedom.  See Cruz, 405 U.S. at 322 n.2.  Free exercise claims brought by prisoners are "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged

infringements of fundamental constitutional rights." <u>Ford v. McGinnis</u>, 352 F.3d 582, 588 (2d Cir. 2003) (quoting <u>O'Lone</u>, 482 U.S. at 349); <u>see also</u> <u>Shaw v. Murphy</u>, 532 U.S. 223, 227-229 (2001).

    B.   <u>The Religious Land Use and Institutionalized Persons Act Claim</u>

Palermo's allegation that he was denied access to a religious diet and religious items can also be construed as a claim brought under the RLUIPA which, in certain circumstances, prohibits government infringement on the practice of religion. <u>See</u> <u>Mayweathers v. Newland</u>, 314 F.3d 1062, 1065 (9th Cir. 2002). Under the RLUIPA, governmental imposition of a "substantial burden on the religious exercise" of a prisoner is prohibited, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The phrase "religious exercise" is to be construed liberally to include belief and professing of one's faith as well as the performance of physical acts, such as assembling with others to worship. <u>See</u> <u>Cutter</u>, 544 U.S. at 720.

C.  Wicca

"'Wicca is a polytheistic faith based on beliefs that prevailed in both the Old World and the New World before Christianity.'"  Kay v. Bemis, 500 F.3d 1214, 1219 n.5 (10th Cir. 2007) (quoting O'Bryan v. Bureau of Prisons, 349 F.3d 399, 400 (7th Cir. 2003)).  As such, Wicca is a religion that has been practiced and recognized for thousands of years.  Threlfail's indication to Palermo that neither he nor any of the RCHC administration would recognize his religion, and, therefore, that he would not be permitted to have a religious diet or religious ritual items, denied Palermo access to freely exercise his religion.  For purposes of preliminary review, I find that nothing in the complaint indicates that there is any reason to believe, at this stage, that there exists any lack of sincerity in Palermo's belief.  Further, I find that religious diets and ritual items can be considered to be important aspects of religious practice or expression.  Nothing in the facts alleged in the complaint give me any reason to believe that this is not the case here.

The complaint adequately alleges that defendant Threlfail has substantially burdened Palermo's religious practice by

denying him a religious diet and religious ritual items. Nothing in the facts alleged indicates or implies that denying Palermo access to these opportunities to practice his religion furthered any compelling governmental interest, or was the least restrictive means of furthering such an interest. Accordingly, Palermo's allegations suffice to state claims against Threlfail under both the Free Exercise Clause of the First Amendment and the RLUIPA. Further, I find that Threlfail's assertion that the RCHC would not recognize Palermo's religious practice implicates Al Wright, who, as the RCHC Superintendent, is responsible for the administration of policies at the RCHC. Accordingly, I will direct that this claim be served against Threlfail and Wright.

IV. <u>Inadequate Vision Care Claim</u>

To state a cause of action under § 1983 premised on inadequate medical care, a plaintiff must allege facts which demonstrate that the defendant acted with deliberate indifference to the prisoner's serious medical needs. <u>Estelle</u>, 429 U.S. at 106; <u>Bean v. Cunningham</u>, 650 F. Supp. 709, 713 (D.N.H. 1986). Deliberate indifference may be manifested by prison medical personnel in their response to prisoners' needs or by prison personnel "intentionally denying or delaying access to medical

11

care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05.  As to the second essential element, "[a] medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudrealt v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).  An allegation of inadequate vision care can support a valid § 1983 action challenging the improper denial of medical care.  See Koehl v. Dalsheim, 85 F.3d 86, 88 (2d Cir. 1996).

Palermo has demonstrated that he had a diagnosed need for vision correction for his astigmatism, a serious medical condition, and that the defendants nevertheless failed to provide him with an eye examination or eyeglasses.  Further, Palermo indicates that he had glasses upon his entry to the RCHC, but that RCHC staff broke his glasses, leaving him without adequate vision correction.  Palermo has alleged the minimum facts necessary to state a claim for inadequate vision care to allow this claim to proceed.  However, the matter cannot, at this time, proceed against Debbie because she has not been identified by her full name.  Defendants must be named in order to be served.

Palermo will be able to obtain Debbie's full name in discovery.[5]
Once Palermo identifies Debbie by her full name, he must properly
move to amend his complaint to notify the Court of her name, and
request that she be served with this action.

### IV. Inadequate Law Library Claim

Palermo claims that no adequate law library is maintained at
the RCHC, and that what legal resources are available are
insufficient to meet his needs as a pro se litigant.  Palermo
asserts, without citing specific details, that he has been
hampered in pursuing his pro se litigation by the lack of
adequate law library facilities at the RCHC.

Although not entitled to all of the constitutional rights
guaranteed to nonincarcerated people, prisoners maintain a

---

[5] Upon service of this action on Threlfail and Wright, Palermo can serve the named defendants with interrogatories to obtain the full name of the presently unnamed defendant pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

constitutional right of access to the courts that affords them access to the tools necessary to challenge their criminal cases, criminal convictions and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  <u>Lewis v. Casey</u>, 518 U.S. 343, 345 (1996).  In order to state a claim for denial of access to the courts under § 1983, a prisoner must demonstrate that the actions that resulted in the denial of access to the courts "hindered his efforts to pursue a legal claim" that he is constitutionally entitled to pursue during his incarceration.  <u>Id.</u> at 351.

Here, Palermo has stated that the library at the RCHC is inadequate.  Palermo has also asserted, albeit minimally, that this lack of resources has diminished his ability to pursue his pro se litigation.[6]  Accordingly, I find that Palermo has stated the minimum facts necessary to allege a violation of his right to an adequate law library, and I will direct that this claim be served.  Although he names no specific defendant in this action,

---

[6]While Palermo does not specify what pro se action has been hindered, I will presume, for purposes of preliminary review, that Palermo may well be referring to one or more of the four prison condition complaints that Palermo has filed in this Court.  Such an action is one that Palermo is constitutionally entitled to maintain.

I find that the Superintendent of the RCHC can be reasonably inferred to be aware of the RCHC's lack of law library facilities, and, in the Order issued simultaneously with this Report and Recommendation, I will direct this claim to be served on Wright.

## Conclusion

For the reasons stated herein, the claims alleging: (1) a violation of Palermo's First Amendment right to freely exercise his religion; (2) a violation of Palermo's rights under the RLUIPA; and (3) a violation of Palermo's right to adequate legal resources, may be served on defendants Threlfail and Wright.  I further authorize service of the claim alleging a violation of Palermo's right to adequate vision care, but withhold an Order directing service of that claim until such time as Palermo properly names a defendant to that claim and amends his complaint to include that defendant.  At that time, service shall be made against the properly named defendant.

My review of the file indicates that Palermo has completed a single summons form listing all of the defendants to this action. Plaintiff must submit a separate summons form for each defendant named.  Plaintiff shall therefore prepare summonses for each

defendant named herein and submit them to the Clerk's office within thirty (30) days of the date of this order.  Upon receipt of the completed summonses, the Clerk's office shall issue the summonses against defendants and forward to the United States Marshal for the District of New Hampshire (the "U.S. Marshal's office") the summonses and copies of the complaint (document nos. 1 & 3), and this Order.  Upon receipt of the necessary documentation, the U.S. Marshal's office shall effect service upon Defendants.  <u>See</u> Fed. R. Civ. P. 4(c)(2).

Defendants are instructed to answer or otherwise plead within twenty days of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).

Palermo is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorney(s), pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:    July 24, 2008

cc:      Christopher Palermo, pro se